1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   J & J SPORTS PRODUCTIONS, INC.,

11            Plaintiff,                          No. CIV S-10-3233 KJM DAD

12        v.

13   JASON BERNARD BROWN and
     LAWRENCE L. BROWN,
14   INDIVIDUALLY and d/b/a AMERICAN        ORDER AND
     SPIRIT SPORTS BAR; and
15   JBEEZY ENTERPRISES, LLC, and           FINDINGS & RECOMMENDATIONS
     unknown business entity d/b/a
16   AMERICAN SPIRIT SPORTS BAR,

17            Defendants.

18   _____/

19            This matter came before the court on July 29, 2011, for hearing of plaintiff J & J

20   Sports Production, Inc's ("plaintiff") motion for default judgment against defendants Jason

21   Bernard Brown and Lawrence L. Brown, individually and d/b/a American Spirit Sports Bar, and

22   Jbeezy Enterprises, LLC, an unknown business entity d/b/a American Spirit Sports Bar

23   (collectively "defendants").  (Doc. No. 17.)  Thomas P. Riley, Esq. appeared telephonically on

24   behalf of plaintiff.  No appearance was made by or for defendants.

25            Upon hearing argument, the court took plaintiff's motion under submission.  For

26   the reasons set forth below, the undersigned recommends that the motion be granted and that

                                               1

1   default judgment be entered against the defaulted defendants.

2                                   BACKGROUND

3          Plaintiff is an international distributor of sports and entertainment programming.

4   Defendants operate a commercial establishment called "American Spirit Sports Bar" in

5   Sacramento, California.  By contract, plaintiff paid for the proprietary rights to distribute the

6   "Oscar De La Hoya v. Manny Pacquiao Welterweight Championship Fight Program (sometimes

7   herein the "Program")," which was telecast nationwide on Saturday, December 6, 2008, via

8   closed-circuit television.  Defendants intercepted and exhibited the Program in defendants'

9   commercial establishment, American Spirit Sports Bar, without authorization.

10         Although service of process was effected on defendants (Doc. Nos. 6, 7 & 8),

11  defendants failed to appear in this action.  On April 29, 2011, plaintiff requested entry of default

12  against defendants. (Doc. No. 11.)  The Clerk entered default against defendants on May 2,

13  2011. (Doc. No. 12.)  On June 21, 2011, plaintiff filed its motion for default judgment with a

14  proof of service reflecting service of the motion on defendants.

15                                LEGAL STANDARDS

16         Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for

17  default judgment.  Upon entry of default, the complaint's factual allegations regarding liability

18  are taken as true, while allegations regarding the amount of damages must be proven.  Dundee

19  Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing

20  Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir.

21  1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc. v.

22  Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

23         Where damages are liquidated, i.e., capable of ascertainment from definite figures

24  contained in documentary evidence or in detailed affidavits, judgment by default may be entered

25  without a damages hearing.  Dundee, 722 F.2d at 1323.  Unliquidated and punitive damages,

26  however, require "proving up" at an evidentiary hearing or through other means.  Dundee, 722

1  F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

2         Granting or denying default judgment is within the court's sound discretion.

3  Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089,

4  1092 (9th Cir. 1980).  The court is free to consider a variety of factors in exercising its discretion.

5  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Among the factors that may be

6  considered by the court are

7      (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint,
8  (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due
9  to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

10

11  Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

12                            ANALYSIS

13  I.  Whether Default Judgment Should Be Entered

14         The factual allegations of plaintiff's complaint, taken as true pursuant to the entry

15  of default against defendants, establish the following circumstances:  (1) defendants are the

16  owners, operators, licensees, permitees, persons in charge, or persons with control over the

17  commercial establishment doing business as American Spirit Sports Bar in Sacramento,

18  California; (2) by contract, plaintiff was granted exclusive nationwide television distribution

19  rights to the "Oscar De La Hoya v. Manny Pacquiao Welterweight Championship Fight

20  Program" telecast nationwide on December 6, 2008; (3) pursuant to the contract, plaintiff entered

21  into sublicensing agreements with various commercial entities throughout North America by

22  which it granted those entities limited sublicensing rights to exhibit the De La Hoya v. Pacquiao

23  fight program to their patrons within their establishments; (4) plaintiff is also the assignee of the

24  copyright to the Program for enforcement purposes and therefore, has lawful standing to bring

25  the instant claims of piracy and infringement; (5) as a commercial distributor of sporting events,

26  plaintiff expended substantial monies marketing, advertising, promoting, administering, and

1    transmitting the Program to its customers; (6) with full knowledge that the Program was not to be

2    intercepted, received, and exhibited by unauthorized entities, defendants exhibited the De La

3    Hoya v. Pacquiao fight program at the time of its transmission and did so willfully and for

4    purposes of commercial or private gain; (7) by receiving and exhibiting without authorization the

5    satellite and/or cable transmissions of the Program, defendants infringed upon plaintiff's

6    copyright rights; (8) by such actions, defendants violated Section 501(b) of the Copyright Act, 17

7    U.S.C. §§ 501(a), (b); (9) pursuant to the Copyright Act, plaintiff is entitled to damages, in the

8    discretion of the court, up to a maximum amount of $150,000, pursuant to 17 U.S.C. § 504(c), as

9    well as an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505; (10) defendant also

10   tortiously obtained possession of plaintiff's Program and wrongfully converted it to defendants'

11   own use and benefit; (11) by reason of defendants' tortious conversion, plaintiff is entitled to

12   compensatory and punitive damages; (12) the interception and exhibition of the De La Hoya v.

13   Pacquiao fight program violated California Business & Professions Code § 17200, et seq.; and

14   (13) by reason of defendant's violation of the Business & Professions Code § 17200, et seq.,

15   plaintiff is entitled to such remedies as restitution, disgorgement, and attorneys' fees. (Doc. No.

16   1 at 4-9.)

17           In its complaint, plaintiff prays for statutory damages of $150,000 for the willful

18   violation of 17 U.S.C. § 501(a) and for recovery of all costs and reasonable attorneys' fees.

19   Plaintiff seeks compensatory and punitive damages, reasonable attorneys' fees, and costs of suit

20   for defendants' tortious conversion of plaintiff's sports program. Plaintiff seeks restitution,

21   declaratory relief, injunctive relief, attorneys' fees, and costs of suit for defendants' violation of

22   the California Business & Professions Code. (Doc. No. 1 at 10-11.)

23           Plaintiff's complaint and summons were served upon defendants on March 26,

24   2011, by substituted service on the person-in-charge at American Spirits Sports Bar. (Doc. Nos.

25   6-8.) The undersigned finds that defendants were properly served with the complaint and that the

26   Clerk properly entered the default of defendants on May 2, 2011. (Doc. No. 12.) Defendants

1   were also served with plaintiff's request for entry of default and application for default judgment

2   by the court.  (Docs. Nos. 11 & 17.).  Despite being served with process and all papers filed in

3   connection with plaintiff's request for entry of default and motion for default judgment,

4   defendants Jason and Lawrence Brown failed to respond to plaintiff's complaint, to plaintiff's

5   request for entry of default, or to plaintiff's motion for default judgment.  Nor did defendants

6   appear at the hearing on plaintiff's motion.  In short, defendants have failed to participate in this

7   action in any way.

8           After weighing the Eitel factors, the undersigned finds that the material

9   allegations of the complaint support plaintiff's claims.  Plaintiff will be prejudiced if default

10  judgment is denied because plaintiff has no other recourse for recovery of the damages suffered

11  due to the defendants' failure to pay for the right to exhibit the De La Hoya v. Pacquiao fight

12  program to the patrons within American Spirit Sports Bar.

13          In light of the entry of default against defendants, there is no apparent possibility

14  of a dispute concerning the material facts underlying the action.  Nor is there any indication that

15  the defendants' default resulted from excusable neglect, as defendants were properly served with

16  plaintiff's pleading as well as with plaintiff's request for entry of default and motion for default

17  judgment.  Defendants have had ample notice of plaintiff's intent to pursue a default judgment

18  against them.

19          Although public policy generally favors the resolution of a case on its merits,

20  defendants' failure to appear and defend against plaintiff's claims has made a decision on the

21  merits impossible in this case.  Because most of the Eitel factors weigh in plaintiff's favor, the

22  undersigned, while recognizing the public policy favoring decisions on the merits, will

23  recommend that default judgment be entered against the defaulted defendants.

24  II.  Terms Of Judgment To Be Entered

25          After determining that entry of default judgment is warranted, the court must next

26  determine the terms of the judgment.  Upon consideration of all of plaintiff's briefing, the

5

1   undersigned will recommend that damages be awarded but not in the amount requested.

2          By its motion for default judgment, plaintiff seeks a judgment in the total amount

3   of $112,200.00 against defendants.  That sum consists of $110,000 for violation of 47 U.S.C.

4   § 605(e)(3)(B)(iii) and (c)(ii) and $2,200 for the tort of conversion.  (Doc. No. 17-2, Decl. of

5   Thomas P. Riley at 2.)  The undersigned is mindful that defendants were served with plaintiff's

6   motion for default judgment and were placed on notice of the amount sought by plaintiff.

7   However, granting or denying default judgment is within the court's sound discretion, and one of

8   the factors the court is free to consider in exercising its discretion is the sum of money at stake.

9   See J & J Sports Productions, Inc. v. Betancourt, No. 08cv937 JLS (POR), 2009 WL 3416431, at

10  *3 (S.D. Cal. Oct. 20, 2009).

11         While plaintiff brought this action pursuant to the Copyright Act, it bases its

12  request for $110,000.00 in statutory damages on the Federal Communications Act of 1934, 47

13  U.S.C. § 605 et seq., dealing with satellite piracy.  (Doc. No. 17-1 at 8-11, Mem. P&A in Supp.

14  Default J.; Doc. No. 17-6, Proposed Order.)  Because the remedial structures of the statutes are

15  closely parallel, the court will base its award of damages, as requested by plaintiff, on the rules

16  governing awards under Section 605.  See 17 U.S.C. § 504(c) and 47 U.S.C. § 605(e)(3) (both

17  providing for statutory minimums and maximums, increases of the statutory maximums for

18  "willfulness," and reductions in statutory minimums where a defendant is unaware of the

19  violation); see also Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc., 98 F. Supp. 2d

20  958, 963 (N.D. Ill. 2000) (recognizing that the same conduct can violate both Section 605 and the

21  Copyright Act and that the remedial structures of the two statutes are analogous);[1] accord Home

22  Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993).

23         Under the Federal Communications Act, a plaintiff may elect to seek either actual

24  or statutory damages.  47 U.S.C. § 605(e)(3)(C)(i)(I & II).  The statute provides for statutory

25  _____

26  [1]  In Kingvision, the court also held that the Copyright Act's three year statute of
     limitations applied to claims under Section 605.

1    damages for each violation of not less then $1,000 and not more than $10,000, as the court

2    considers just.  47 U.S.C. § 605(e)(3)(C)(i) (II).  Here, plaintiff seeks the maximum award of

3    $10,000.  The statute also authorizes enhanced damages of not more than $100,000 if the court

4    finds the violation was "committed willfully and for purpose of direct or indirect commercial

5    advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(ii).  Again, here, plaintiff seeks

6    the maximum award of $100,000.  While acknowledging that the amount of enhanced statutory

7    damages it seeks here is "significant," plaintiff argues that the requested amount is justified

8    primarily because of the need to deter broadcast piracy in light of the harm done to plaintiff's

9    business as a result of such activities.  The court finds plaintiff's argument in large part

10   persuasive in light of the record before the court in this action.

11            In this case, plaintiff's investigator stated that the sports bar in question had a

12   seating capacity of approximately 60 people and that during the De La Hoya v. Pacquiao fight

13   broadcast, she observed between 21 and 27 patrons inside the establishment.  The investigator

14   reported that there was no cover charge for entry on the night in question.  There is also no

15   evidence before the court of any promotion by defendants that the fight in question would be

16   shown at the establishment.  Nor is there any evidence that a special premium on food and drink

17   was being charged at the establishment on the night of the fight.  The investigator does, however,

18   state in her affidavit that the sports bar had four 37-inch televisions and two 47-inch televisions,

19   five of which were showing the De La Hoya v. Pacquiao fight broadcast while the investigator

20   was inside.  Finally, and perhaps most importantly, the court has taken judicial notice of its own

21   records which establish that the defendants are repeat broadcast piracy offenders.  See J & J

22   Sports Productions, Inc. v. Brown, No. Civ S-10-224 GEB DAD, 2010 WL 4365537, at *1 (E.D.

23   Cal. Oct. 27, 2010) (on default judgment recommending $1,000 in statutory damages and $3,000

24   in enhanced statutory damages in connection with  defendants' unauthorized broadcast of the St.-

25   Pierre v. Penn 2 fight on January 31, 2009); J & J Sports Productions v. Brown, No. Civ. S-11-

26   648 KJM CKD, Findings & Recommendations (Doc. No. 20), filed Aug. 31, 2011 (awarding

1   enhanced statutory damages for a total award of $85,000 based on defendants' prior acts of

2   commercial signal piracy).

3          In light of this record reflecting that defendants are repeat broadcast piracy

4   offenders, who have been made well aware in the past that pirating a commercial signal is

5   unlawful yet have willfully refused to terminate their illegal activities, the court will recommend

6   that judgment be entered against defendants and that plaintiff be awarded $10,000 in statutory

7   damages plus $40,000 in enhanced statutory damages for a total of $50,000 in damages pursuant

8   to 47 U.S.C. § 605(e)(3)(C)(i & ii).  See J & J Sports Productions, Inc. v. Ferreyra, Civ. S-09-

9   1572 MCE DAD, Findings & Recommendations (Doc. No. 11), filed Mar. 9, 2010 (awarding

10  $10,000 in statutory damages plus $40,000 in enhanced statutory damages based on a record

11  reflecting that the defendant was a repeat broadcast piracy offender, was charging a cover charge

12  for entry and otherwise blatantly exploiting the pirated broadcast); J & J Sports Productions, Inc.

13  v. Montecinos, No. C 09-02604 JSW, 2010 WL 144817, at *5-7 (N.D. Cal. Jan. 11, 2010)

14  (granting $5,000 in statutory damages and $10,000 in enhanced statutory damages as part of

15  default judgment where plaintiff presented evidence that the defendants were "multiple

16  offenders" who had engaged in "persistent theft" of such pay-per-view broadcasts); J & J Sports

17  Productions, Inc. v. Ferreyra, No. C 08-128 LKK KJM, 2008 WL 4104315, at *1 (E.D. Cal. Aug.

18  28, 2008) (recommending $100,000 in enhanced statutory damages in light of defendant's prior

19  acts of commercial signal piracy).

20         In his declaration in support of the motion for default judgment, counsel indicates

21  that plaintiff also seeks the award of $2,200 in damages for the state law tort of conversion.

22  Plaintiff is entitled to such an award.  See J & J Sports Productions, Inc. v. Ro, 2010 WL 668065,

23  at *4; J & J Sports Productions, Inc. v. Montecinos, 2010 WL 144817, at *7; but see J & J Sports

24  Productions, Inc. v. Ferreyra, 2008 WL 4104315, at *1 ("Inasmuch as plaintiff seeks statutory

25  damages rather than actual damages, plaintiff's request for damages for conversion should be

26  denied.").  In moving for default judgment plaintiff has submitted evidence, in the form of a

1   declaration by the President of J & J Sports Productions, Inc. and an attached rate card for the

2   fight in question, establishing that defendants would have been required to pay $2,200 for a

3   proper sublicensing agreement.  See J & J Sports Productions, Inc. v. Ro, No. C 09-02860 WHA,

4   2010 WL 668065, at *4 (N.D. Cal. Feb. 19, 2010) (calculating damages for the tort of conversion

5   based upon the amount that the defendants would have been required to pay for a proper

6   sublicensing agreement).  Therefore, the court will also will recommend that plaintiff also be

7   awarded $2,200 in damages with respect to the tort of conversion.

8        Finally, although the prayer for relief in the complaint as well as the introduction

9   to the motion for default judgment indicates that plaintiff seeks the award of costs and attorneys'

10   fees, the motion for default judgment does not contain any argument in support of such a request.

11   Moreover, no evidence of costs or attorneys' fees incurred was submitted to the court in

12   connection with the pending motion.  Accordingly, the court will not recommend the award of

13   costs and attorneys' fees based on this record.

14                                         CONCLUSION

15        IT IS ORDERED that within seven days after these findings and

16   recommendations are filed, plaintiff shall serve a copy of the findings and recommendations on

17   defendants by mail at the address where service of process was effected, or at any more recent

18   address known to plaintiff, and shall file a proof of such service forthwith; and

19         For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

20        1. Plaintiff's June 21, 2011 motion for default judgment (Doc. No. 17) against

21   defendants individually and doing business as American Spirit Sports Bar be granted;

22        2. Judgment be entered against defendants in the sum of $52,200, consisting of

23   consisting of $10,000 in statutory damages plus $40,000 in enhanced statutory damages for

24   violating 47 U.S.C. § 605 and $2,200 for the tort of conversion; and

25        3. This case be closed.

26   /////

1    These findings and recommendations will be submitted to the United States

2  District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within

3  fourteen (14) days after these findings and recommendations are filed, any party may file written

4  objections with the court.  A document containing objections should be titled "Objections to

5  Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be

6  served and filed within seven (7) days after service of the objections.  The parties are

7  advised that failure to file objections within the specified time may, under certain circumstances,

8  waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th

9  Cir. 1991).

10  DATED: December 9, 2011.

11

12                                                   _____

13                                                   DALE A. DROZD
                                                    UNITED STATES MAGISTRATE JUDGE
14

15  DAD10
    Ddad1\orders.civil\j&jsports.10.3233.mdj.f&rs
16

17

18

19

20

21

22

23

24

25

26

10